## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE SUBPOENA OF GRAHAM STEVENS | ) ) ) | |
| PRAXAIR, INC. and GRAHAM STEVENS, | ) ) ) | Misc. Case No. _____ |
| Movants. | ) ) | |

| | | |
|---|---|---|
| CHINA PETROCHEMICAL DEVELOPMENT CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | District of Connecticut |
| v. | ) ) | Civil Action No. 3:17-cv-2005-SRU |
| PRAXAIR, INC., ANNE ROBY, JOHN PANIKAR, VERNON THAD EVANS, JOYCE CHEN, YU LING SHIEH, MEI LU, WILLIAM PEARCE, STEVE RIDDICK, JAMES WILLIAM SHAUGHNESSY, TOM SCHULTE, MARK JOSEPH MURPHY and STEVE ANGEL, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| PRAXAIR CHEMAX SEMICONDUCTOR MATERIALS COMPANY LIMITED, | ) ) ) | |
| Nominal Defendant. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................4

BACKGROUND ........................................................................................................5

ARGUMENT ............................................................................................................9

    I.    The Subpoenas Are Unduly Burdensome And Cause Undue Expense........................9

    II.    The Subpoenas Seek Impermissible Discovery...........................................................11

        A.    The Subpoenas Improperly Seek Disclosure Of Information Protected By The Work Product Doctrine And A Protective Order..........12

        B.    The Subpoenas Violate The Rule Against Disclosure For Unretained Experts ........................................................................................16

CONCLUSION..........................................................................................................18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   300 F.R.D. 406 (C.D. Cal. 2014) ............................................................................10

*ASARCO, LLC v. Americas Mining Corp.*,
   No. MS07-6289-EJL-MHW, 2007 WL 3504774 (D. Idaho Nov. 15, 2007) ........12, 13, 14, 16

*In re: Bard Ivc Filters Prod. Liab. Litig.*,
   No. 2641, 2016 WL 537587 (D. Ariz. Feb. 11, 2016)............................................16

*Friedland v. TIC - The Indus. Co.*,
   No. 04-cv-01263-PSF-MEH, 2006 WL 2583113 (D. Colo. Sept. 5, 2006) .....................14, 19

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) ............................................................................17

*Meyer v. Colavita, USA, Inc.*,
   No. 11-00696-AG, 2011 WL 2457681 (C.D. Cal. June 17, 2011)...................................14, 16

*Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*,
   No. 16-CV-00427-DCN, 2017 WL 4839375 (D. Idaho Oct. 26, 2017).....................10, 12, 16

*Pebble Ltd. P'ship v. Envtl. Prot. Agency*,
   310 F.R.D. 575 (D. Alaska 2015) ......................................................................11

*Peskoff v. Faber*,
   230 F.R.D. 25 (D.D.C. 2005)............................................................................16

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   No. 14-CV-2061-H, 2015 WL 12843187 (S.D. Cal. Oct. 5, 2015)...................................17, 19

*Republic of Ecuador v. Mackay*,
   742 F.3d 860 (9th Cir. 2014) ............................................................................14

*Statutory Committee of Unsecured Creditors v. Motorola, Inc.*,
   218 F.R.D. 325 (D.D.C. 2003)...................................................................13, 17, 18

*United States v. One Subpoena Served by Defendant Lopez Upon His Def.
   Attorney*,
   13CV2417, 2013 WL 5775138 (S.D. Cal. Oct. 24, 2013)......................................16

**Other Authorities**

Fed. R. Civ. P. 26 ................................................................................................................ *passim*

Fed. R. Civ. P. 45 ................................................................................................................ *passim*

Pursuant to Federal Rules of Civil Procedure 26 and 45, Graham Stevens ("Stevens") and Praxair, Inc. ("Praxair" and, together, with Stevens, "Movants"), respectfully move this Court to quash the document and deposition subpoenas issued by CPDC to Stevens or, in the alternative, for a protective order.[1]

## PRELIMINARY STATEMENT

On the opening day of discovery in the underlying action, *China Petrochemical Development Corp. v. Praxair, Inc. et al.*, No. 17-cv-2005-SRU (D. Conn.), the plaintiff in that action, China Petrochemical Development Corp. ("CPDC"), issued document and deposition subpoenas to Stevens.[2]  Those subpoenas seek expert reports, testimony and "all documents and communications" relating to Stevens' contractual agreement to provide Praxair with expert services in connection with an unrelated, settled bankruptcy claim that Praxair asserted for $25 million in unpaid invoices against a third-party debtor.  CPDC issued subpoenas to Stevens for this information despite clear law that obligates CPDC to seek that discovery from Praxair before issuing any subpoenas.  Also, the subpoenas improperly seek disclosure of documents and communications that constitute attorney work product and, therefore, are not discoverable even from Praxair.  Thus, CPDC is using these subpoenas in an impermissible end-run around the discovery process to extract discovery from a third party that CPDC is not entitled to obtain from Praxair directly.  Further, the subpoenas seek expert opinion testimony, and information used in

---

[1]     Should this Court decline the relief requested, Movants respectfully ask this Court to stay compliance pending a decision on Defendants' Motion to Stay Discovery Pending Resolution of Defendants' Motion to Stay Pending Arbitration or, in the Alternative, to Dismiss by the United States District Court for the District of Connecticut in the underlying action.  *See China Petrochem. Dev. Corp. v. Praxair, Inc. et al.*, No. 17-cv-2005-SRU (D. Conn.) [Dkt. 59].

[2]     For the Court's convenience, copies of the subpoenas issued to Stevens are attached as Exhibits 1 and 2 to the Declaration of Keely Duke in Support of the Motion to Quash, or, in the Alternative, for a Protective Order, dated March 2, 2018 ("Wulfe Decl.").

forming that opinion, from an expert who has not been retained in this matter.  Coercing an expert from another matter to provide what amounts to unpaid and unwilling expert services is well recognized by the courts as an improper use of a subpoena.

As a result, the Court should quash the subpoenas or, in the alternative, grant a protective order barring enforcement of the subpoenas.

## **BACKGROUND**

The underlying action, *China Petrochemical Development Corp. v. Praxair, Inc. et al.*, No. 3:17-cv-2005-SRU (D. Conn.), pending before the United States District Court for the District of Connecticut represents CPDC's latest effort in a multi-jurisdictional campaign against Praxair related to the alleged breach of a joint venture agreement.  *See* Cmplt. ¶¶ 42-43, 96, 123, 142 (listing various Taiwanese court actions and arbitration proceeding).[3]

In 1998, pursuant to that joint venture agreement, Praxair and CPDC formed a Taiwanese company, Praxair Chemax Semiconductor Materials Company Limited ("PCSM"), to purchase, package and sell or re-sell industrial gases, including silane, which is used in electronics manufacturing.  *Id.* ¶¶ 37, 41, 45.  After years of profitability, in 2012 CPDC accused Praxair and certain Praxair-nominated PCSM directors of using PCSM to purchase silane from Praxair at above-market prices in order to offset Praxair payments to a third-party silane supplier.  *Id.* ¶¶ 48-51.  Starting in November 2012, CPDC initiated the first of what would total twenty-seven civil and criminal actions in Taiwanese courts.  *See China Petrochem. Dev. Corp. v. Praxair, Inc. et. al*, Dkt. 59-2, Ex. 2.

On January 24, 2017, CPDC initiated mandatory, binding arbitration against Praxair in the International Chamber of Commerce's International Court of Arbitration ("ICC") pursuant to

---

[3]    All references to "Cmplt." refer to CPDC's Complaint in *China Petrochemical Development Corp. v. Praxair, Inc. et al.*, No. 3:17-cv-2005-WWE (D. Conn.), Dkt. 1.

the terms of the parties' joint venture agreement.  The arbitration hearing concluded on February 2, 2018, post-hearing briefing is scheduled to be complete by April 13, 2018, and a decision is expected shortly thereafter.

On August 15, 2017, CPDC filed an application in the District of Connecticut pursuant to 28 U.S.C. § 1782 seeking court approval to issue a subpoena for document and deposition discovery in aid of the ICC arbitration and three CPDC-filed Taiwan court actions.  The District of Connecticut quashed that subpoena with respect to the arbitration, *see* Ruling and Order on Motion to Quash Subpoena, *In re Ex Parte Application of China Petrochemical Development Corp. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, No. 3:17-cv-2138-SRU (D. Conn.), Dkt. 41, and Praxair's motion to quash the remainder of the subpoena is pending.

On December 4, 2017, CPDC filed its Complaint in the District of Connecticut against Praxair, twelve current and/or former Praxair or PCSM employees and, nominally, PCSM.  The Complaint asserts eleven causes of action, including civil RICO, breach of fiduciary duty, conversion, and various other common law and Taiwanese statutory claims.  *See* Cmplt. ¶¶ 209-59.  On March 1, 2018, Defendants filed a motion to stay the case in favor of arbitration or, in the alternative, to dismiss the Complaint for various reasons, including *forum non conveniens*, lack of personal jurisdiction over certain Defendants and failure to state a claim for, among other reasons, expiration of the statute of limitations on the civil RICO claim, which is the only basis alleged for federal jurisdiction.  On March 2, 2018, Defendants filed a motion to stay discovery pending the District of Connecticut's decision on Defendants' dispositive motion.

One month prior, on February 1, 2018, which marked the first day of discovery in the underlying action, CPDC not only issued 50 document requests on the Defendants, but also

issued document and deposition subpoenas to Stevens.[4]  Stevens has no connection to or knowledge related to the underlying Connecticut district court action.  Rather, Stevens provided expert witness services over a roughly two-month period in 2013 to Praxair in connection with Praxair's approximately $25 million proof of claim against United Solar Ovonic LLC ("United Solar"), a debtor in an unrelated bankruptcy.  *See In re Energy Conversion Devices, Inc., et al.*, No. 12-43166 (Bankr. E.D. Mich.), Dkt. 270, 605.  That claim arose out of United Solar's bankruptcy rejection of its contract with Praxair for the purchase of silane gas, and the dispute centered on the possibility and extent of mitigation of damages.  *See id.*, Dkt. 1921-1 at 2.

Praxair retained Stevens to provide expert analysis related to the legitimacy of United Solar's mitigation defense, including the then-current state of the silane market for ISO containers of silane and supply-and-demand expectations for silane gas from 2013 to 2016.  *See* Wulfe Decl. ¶ 4.  Praxair retained Stevens through his then-employer, Navigant Economics, LLC and Navigant Consulting, Inc. (together, "Navigant"), pursuant to a contract executed on March 18, 2013.  *Id.* ¶ 5.  That contract expressly states that the experts' work is being performed at the direction of Praxair's outside counsel and therefore is counsel's work product.  *Id.*  It also states that the experts are prohibited from providing any confidential or privileged information to third parties.  *Id.*  Further, discovery in the bankruptcy case was subject to a protective order stating that any confidential information "shall be used solely for the purposes of this Action and shall not be used for any other purpose, including, without limitation, any business, proprietary, commercial, or government purpose."  *In re Energy Conversion Devices*, Dkt. 1636 ¶ 5.  While

_____

[4] CPDC amended its subpoenas to change Stevens' address and reissued the revised subpoenas the following day.  CPDC also issued substantively identical document and deposition subpoenas to Julie Carey ("Carey"), a District of Columbia resident who worked with Stevens at the time in question.  Carey and Praxair are moving to quash the Carey subpoenas before the United States District Court for the District of Columbia.

an expert report was produced, the proof of claim dispute settled prior to any deposition of

Stevens and without trial.  Wulfe Decl. ¶ 6.

CPDC's document subpoena to Stevens requests:

1. All documents and communications reflecting or relating to any expert report(s) You prepared in connection with *In re Energy Conversion Devices, Inc., et al.*, Case No. 12-43166 (Bankr. E.D. Mich.).

2. All documents and communications reflecting or relating to any testimony You gave in connection with *In re Energy Conversion Devices, Inc., et al.*, Case No. 12-43166 (Bankr. E.D. Mich.), whether such testimony was given in a deposition, at a hearing, at trial, or otherwise.

3. All documents and communications reflecting or relating to the market price of silane.

4. All documents and communications reflecting or relating to the purchase and sale of silane by Praxair or any of Praxair's subsidiaries or affiliates.

5. All documents and communications reflecting or relating to CPDC.

*Id.*, Ex. 1 at 4.

The contemporaneously served document requests to Defendants contained overlapping

requests, including, as relevant here:

44. All documents and communications reflecting or relating to In re Energy Conversion Devices, Inc., et al., Case No. 12-43166 (Bankr. E.D. Mich.).

45. All documents and communications produced by Praxair, Inc. in In re Energy Conversion Devices, Inc., et al., Case No. 12-43166 (Bankr. E.D. Mich.), including without limitation expert reports.

*Id.*, Ex. 3 at 6.

Months before issuing the subpoenas, CPDC requested an order in the ICC arbitration

compelling production of the same expert report sought here.  *See id.* ¶ 7.  The arbitrators denied

that request during the arbitration hearing.  *Id.*

## ARGUMENT

## I.    The Subpoenas Are Unduly Burdensome And Cause Undue Expense

The document and deposition subpoenas to Stevens should be quashed because they impose an undue burden and expense upon Stevens.  The fact that CPDC served document requests upon Praxair that seek substantially identical information as the Stevens subpoenas, yet, on the same day and without even waiting for Praxair's responses and objections, issued the Stevens subpoenas establishes a violation of Rule 45(d)(1) that, without more, justifies quashing the Stevens subpoenas.

Rule 45(d)(3)(A) provides that courts "must" quash a subpoena that "subjects a person to undue burden."[5]  The courts look to various factors in assessing the burden imposed by a subpoena, including whether the discovery is unreasonably cumulative or duplicative and/or obtainable from a more convenient, less burdensome or less expensive source.  *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).  In addition, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry.  *Id.* (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *see Nelson-Ricks Cheese Co. v. Lakeview Cheese Co., LLC*, No. 16-CV-00427-DCN, 2017 WL 4839375, at *3 (D. Idaho Oct. 26, 2017) ("The Court does not like to burden third parties unless absolutely necessary. For these reasons the Court will quash the subpoenas.").

That CPDC immediately subpoenaed Stevens for the same information that it requested from Praxair without allowing the discovery process with Praxair to unfold is dispositive of this

---

[5] Rule 26(b)(2) similarly provides that a court "must limit the frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

issue; CPDC has failed to heed Rule 45 and "take reasonable steps to avoid imposing undue

burden or expense" on Stevens.  Fed. R. Civ. P. 45(d)(1); *see also Nelson-Ricks Cheese Co.*,

2017 WL 4839375, at *3 ("Undoubtedly, [the defendant] is the more convenient party from

which to get this information. Third party subpoenas are also quite intrusive."); *Pebble Ltd.*

*P'ship v. Envtl. Prot. Agency*, 310 F.R.D. 575, 581 (D. Alaska 2015) (finding that subpoenas of

non-parties were unduly burdensome where "[t]he communications of [two non-parties] with the

EPA will all be discoverable by plaintiff from the EPA" as "[d]iscovery from the EPA will be

more convenient, less burdensome, and less expensive than discovery from [the non-parties]"

and "[w]hat plaintiff seeks from [the non-parties] will surely be cumulative and duplicative of

the discovery plaintiff seeks from the EPA").  Moreover, the subpoenas are, on their face, unduly

burdensome and expensive.  The document subpoena seeks over twenty years of information, *see*

Wulfe Decl., Ex. 1 at 3, which is undeniably unduly burdensome and expensive.  For the same

reason, requiring Stevens to sit for a deposition regarding twenty years of information is patently

unduly burdensome.  The document requests also seek "all documents and communications" not

only connected with Stevens' retained expert services for Praxair in the bankruptcy proceeding,

but also for "all documents and communications" about the "market price of silane," *generally*.[6]

*Id.*, Ex. 1 at 4, Nos. 1-2 & 3.

  In addition, by seeking "all documents and communications" about Stevens' past retained

expert services for the bankruptcy proceedings, the requests necessarily encompass privileged

and work-product protected documents that will require a burdensome and costly attorney review

and assembly of a privilege log.  That burden would only be increased if Stevens were to follow

---

[6] The twenty-year time period is particularly excessive in light of the fact that Stevens' expert engagement for Praxair in the bankruptcy proceeding was limited to a two-month period in 2013.  While that would necessarily limit the time period applicable to two of the requests, the other requests, particularly Request No. 3, would implicate and require a search over the entire twenty-year period.

CPDC's instruction regarding logging of privileged documents, which far exceeds the requirement under Rule 45.  *See id.*, Ex. 1 at 1-3, Instruction Nos. 2, 6-7.

The unduly burdensome nature of the subpoenas is further compounded by the incredibly broad definitions that CPDC supplied for "Praxair" and "CPDC."  *See id.* at 3 (defining Praxair to include Praxair and "any . . . parents, subsidiaries, affiliates, divisions, departments, or offices, and any of its present or former employees, agents, attorneys, representatives and any other Person(s) acting or purporting to act on any of their individual or collective behalf" and defining CPDC to include CPDC "and any person or entity acting for or on behalf of" CPDC).

Consequently, the document and deposition subpoenas seek expansive discovery from a third party without first seeking discovery from a party to the litigation and without making the mandated effort to comply with Rule 45's command to minimize the burden to Stevens.

## II.  __The Subpoenas Seek Impermissible Discovery__

In addition to being unduly burdensome, CPDC's subpoenas require Stevens to produce documents and communications that were created at the request of, and for the exclusive use of, Praxair, and at the direction of, Praxair's counsel in connection with a bankruptcy claim unrelated to the underlying Connecticut district court action.  Praxair paid the experts for their services, obligated the experts to prevent disclosure to third parties, both contractually and pursuant to the bankruptcy court protective order, and expressly stated the protected nature of the experts' services in its contract with Stevens.  Praxair, therefore, is the only party that possesses the right or ability to waive Praxair's privilege or work product protections.[7]  Yet, the subpoenas

---

[7]     As a result, Praxair would have standing to file this motion on its own.  *See, e.g.*, *ASARCO, LLC v. Americas Mining Corp.*, No. MS07-6289-EJL-MHW, 2007 WL 3504774, at *4 (D. Idaho Nov. 15, 2007) (movant had standing to assert work product protection over reports subpoenaed from movant's expert retained in previous, unrelated matter); *see also Nelson-Ricks Cheese Co., Inc.*, 2017 WL 4839375, at *3 (standing exists for parties to litigation to dispute third-party discovery where the party "believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26").

seek documents and information from Stevens that are plainly subject to protection under the work-product doctrine.

Moreover, the subpoenas seek Stevens' expert opinion testimony and "all" information used in forming his opinions, despite the fact that Stevens has not been retained by any party in this matter.  In essence, CPDC seeks to convert Stevens into an unpaid, involuntarily expert for CPDC by demanding that he produce "[a]ll documents and communications reflecting or relating to the market price of silane," "the purchase and sale of silane by Praxair or any of Praxair's subsidiaries or affiliates," or "CPDC" and testify regarding his expert advice to Praxair. However, the law is clear:  "In a society where knowledge is so valuable, there is something unfair about the courts permitting their processes, such as the issuance of a subpoena, to destroy that market in order to take for free the product of an individual's diligence, research, and expertise."  *Statutory Committee of Unsecured Creditors v. Motorola, Inc.*, 218 F.R.D. 325, 326 (D.D.C. 2003) (quashing subpoena issued to former expert).

Accordingly, this Court should quash the subpoenas, or in the alternative issue a protective order, to prohibit CPDC's misuse of the subpoena process in an effort to obtain privileged information and an unretained expert's testimony.

### A.    The Subpoenas Improperly Seek Disclosure Of Information Protected By The Work Product Doctrine And A Protective Order

As this Court has stated, Rule 45(d)(3) (formerly Rule 45(c)(3)) "'explicitly authorize[s] the quashing of a subpoena as a means of protecting a witness from the misuse of the subpoena power.'"  *ASARCO, LLC v. Americas Mining Corp.*, No. MS07-6289-EJL-MHW, 2007 WL 3504774, at *5 (D. Idaho Nov. 15, 2007) (quoting Fed. R. Civ. P. 45, Advisory Comm. Note,

1991 amend.).  Pursuant to Rule 45, the Court "must quash" any subpoena that "requires

disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R.

Civ. P. 45(d)(3)(A)(iii).  Moreover, pursuant to Rule 26(c), the Court may issue a protective

order where good cause warrants preventing compliance with a subpoena.  *ASARCO*, 2007 WL

3504774, at *6.

Here, CPDC's subpoenas seek documents and testimony that are clearly protected by the

work product doctrine and should be quashed.  The work product doctrine shields documents and

mental impressions prepared by attorneys or experts in anticipation of litigation, as well as

attorney-expert communications.  *See Republic of Ecuador v. Mackay*, 742 F.3d 860, 869-70 &

n.3 (9th Cir. 2014).  Stevens was retained by Praxair in the bankruptcy matter specifically to

prepare an expert report, and potentially testify, to support Praxair's claim in the proceeding.

Further, Stevens performed his work under the express understanding that it was "undertaken . . .

for and under the direction of Counsel and, accordingly, is part of Counsel's work product."  *See*

Wulfe Decl. ¶ 5.

Yet, CPDC's first document request seeks the production of "[a]ll documents and

communications reflecting or relating to" the expert report that Stevens "prepared in connection

with" his services on behalf of Praxair in the *Energy Conversion Devices* bankruptcy proceeding.

*Id.*, Ex. 1 at 4.  That request, by a plain reading, is directed to protected work product.[8]  *See*

*ASARCO*, 2007 WL 3504774, at *9, *10 (quashing document and deposition subpoenas because

plaintiff's requests for information from a business consulting firm that served as an expert for a

third party in an unrelated litigation were directed to work product); *see also Meyer v. Colavita,*

---

[8]     To the extent any documents responsive to CPDC's subpoena might fall within the narrow
exceptions to Rule 26(b)(4), those documents nevertheless would be undiscoverable under Rule
45(d)(3)(B)(ii) for the reasons stated below.

*USA, Inc.*, No. 11-00696-AG, 2011 WL 2457681, at *3 (C.D. Cal. June 17, 2011) (denying, on work-product grounds, plaintiff's motion to compel attorney to produce third-party testing and analysis performed at the attorney's request in anticipation of separate litigation); *Friedland v. TIC - The Indus. Co.*, No. 04-cv-01263-PSF-MEH, 2006 WL 2583113, at *4 (D. Colo. Sept. 5, 2006) (stating that work product protection extends to Rule 45 and "[t]he fact that the previous lawsuit settled in no way ends the need for protection under the work-product doctrine"). While Stevens did not provide any deposition or trial testimony in connection with the bankruptcy proceeding, thus rendering the second document request moot, the remaining requests would necessarily include documents and impressions related to his expert services.

Although the work-product doctrine is not an absolute barrier to production, its protection can be overcome only where the party seeking production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). CPDC cannot make such a showing.

Discovery in the underlying Connecticut district court action only recently commenced, and CPDC has already served document requests on Praxair for the same documents it seeks in the document subpoena to Stevens. *Compare* Wulfe Decl., Ex. 3 at 6, *with id.*, Ex. 1 at 4. CPDC cannot establish undue hardship in obtaining the "substantial equivalent" to the documents sought by the subpoena to Stevens when the discovery process in the underlying action has barely begun. Under Rule 26(b)(2)(C)(i), the court must limit discovery where there is a determination that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." This Court has recognized that proceeding immediately with third-party subpoena practice is

improper: "Undoubtedly, [the defendant] is the more convenient party from which to get this information. Third party subpoenas are also quite intrusive. The Court does not like to burden third parties unless absolutely necessary. For these reasons the Court will quash the subpoenas." *See Nelson-Ricks Cheese*, 2017 WL 4839375, at *3; *see also ASARCO*, 2007 WL 3504774, at *11 ("Nor should [the parties] be permitted to circumvent the protections that would ordinarily be given to [the party that retained the expert] under Fed. R. Civ. P. 26(b)(4)(B) if [that party] was a party to the [litigation].").

Additionally, this Court and numerous others have noted that "undue hardship" does not exist simply because CPDC would have to expend money to retain its own expert to create a similar opinion. *See In re: Bard Ivc Filters Prod. Liab. Litig.*, No. 2641, 2016 WL 537587, at *7 (D. Ariz. Feb. 11, 2016) (rejecting contention that third party expert report should be produced because plaintiffs "in this substantial and well-funded MDL proceeding . . . should not be put to the time and expense of retaining their own experts" to create "the substantial equivalent . . . through their own experts"); *ASARCO*, 2007 WL 3504774, at *9 (rejecting argument that cost to gather and "undertake own evaluation" of the relevant price information constituted substantial need or undue hardship); *Meyer*, 2011 WL 2457681, at *3 ("[C]ost alone does not constitute substantial need or undue hardship.").

Separately, CPDC's request for an expert report from the bankruptcy proceeding or testimony regarding that report also should be quashed in light of the bankruptcy court's protective order, which restricts productions to use solely in the bankruptcy proceeding and not for any other purpose. *See In re Energy Conversion Devices*, Dkt. 1636 ¶ 5. That protective order renders the subpoenaed information "other protected matter" under Rule 45, and cannot be produced. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also United States v. One Subpoena Served*

15

*by Defendant Lopez Upon His Def. Attorney*, 13CV2417, 2013 WL 5775138, at *2 (S.D. Cal. Oct. 24, 2013) (quashing subpoena where information was subject to court-issued protective order and "[c]onsequently . . . considered 'protected matter' under [Rule 45]"); *Peskoff v. Faber*, 230 F.R.D. 25, 31 (D.D.C. 2005) (stating that subpoenaed party "[could not] be instructed by this Court to provide any information regarding [separate litigation] that is currently protected by a confidentiality agreement ordered or approved by another court").

Accordingly, the subpoenas should be quashed under Rule 45(d)(3)(A)(iii) as well.

### B.     The Subpoenas Violate The Rule Against Disclosure For Unretained Experts

Rule 45(d)(3)(B) further supports the motion to quash.  Rule 45(d)(3)(B) provides for quashing a subpoena where the subpoena requires "'disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.'"  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-CV-2061-H, 2015 WL 12843187, at *1 (S.D. Cal. Oct. 5, 2015) (quoting Fed. R. Civ. P. 45(d)(3)(B)(ii)).  It is intended to provide "'appropriate protection for the intellectual property of non-party witness[es]'" and prevent "'the use of subpoenas to compel the giving of evidence and information by unretained experts.'"  *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (quoting Fed. R. Civ. P. 45, Advisory Comm. Notes, 1991 amendments); *see also Statutory Comm. of Unsecured Creditors*, 218 F.R.D. at 326.

Here, CPDC seeks to convert Stevens into an unpaid and involuntary expert witness for its case in direct violation of Rule 45(d)(3)(B)(ii).  Stevens has not been retained as an expert by either CPDC or Praxair in the Connecticut district court action, and is therefore an "unretained expert" subject to the protection of Rule 45.  *See Presidio Components*, 2015 WL 12843187, at *1 ("Dr. Ewell was a retained testifying expert for Presidio in a prior litigation between the two parties.  But, Dr. Ewell is not a retained testifying expert in the present action.") (citations

omitted).  Stevens also does not have any factual knowledge about the "specific occurrences in dispute" between CPDC and Praxair.  *See id.*  In fact, his services for Praxair in connection with the bankruptcy proceeding preceded the ICC arbitration and the underlying Connecticut district court action by four and five years, respectively.

    *Statutory Committee of Unsecured Creditors v. Motorola, Inc.* is instructive.  In that case, Iridium, a company that Motorola came to control, had retained the services of Carol Ingley to provide expert insight into the market for mobile satellite telecommunication services.  218 F.R.D. at 326.  The unsecured creditors committee charged that Motorola was aware that Iridium's market demand was weak and that Iridium's business plan was fundamentally flawed, but that Motorola withheld this information in order to use Iridium's services for Motorola's own gain at the investor's expense.  *Id.* at 325.  Although Ingley prepared several reports used by Iridium, Ingley had no knowledge as to how Iridium used her reports or, therefore, whether Iridium's business plans were appropriate.  *Id.* at 327.  Motorola nevertheless subpoenaed Ingley for her reports because if the reports predicted a "rosy" result for Iridium's market, then Iridium's business plan could not be flawed and Motorola could not be liable.  *Id.*  The district court, however, reasoned that Ingley could not provide any factual information regarding the true dispute – whether Iridium's view of its market and business plan for that market was reasonable – and forcing Ingley to produce her reports about her predictions for mobile satellite telecommunications services would unfairly deprive Ingley of the value of the expertise she provided to Iridium.  *Id.* at 326-27 ("But, a prediction is, by its very nature, an opinion based on the application of one's expertise to the facts one has gathered.").

    Here, CPDC claims that, starting in 2008 and continuing through 2012, Praxair used its control over PCSM to sell silane to PCSM at off-market prices that unjustly enriched Praxair at

PCSM's (and therefore, as a 49% owner of PCSM, CPDC's) expense.  Cmplt. ¶¶ 60-74.  Just as

with Ingley in *Statutory Committee*, Stevens has no factual knowledge regarding Praxair's sales

of silane to PCSM.  Nor could he.  He was retained to provide his expert opinion about a specific

segment of the silane market from 2012 to 2016, as relevant to the bankruptcy claim.  Requiring

Stevens to produce documents and give testimony about his expert opinion of the silane market

would transform Stevens into an unpaid, involuntary expert for CPDC.  *See Presidio*, 2015 WL

12843187, at *1 ("Thus, it appears that [the defendant] is attempting to use the subpoena at issue

to force [the plaintiff's former expert] to act as an unpaid expert witness for [the defendant] and,

therefore, the Court may quash the subpoena pursuant to Rule 45(d)(3)(B)(ii).").

In order to override the protection afforded Stevens by Rule 45, CPDC would have to

establish a "substantial need for the testimony or material that cannot be otherwise met without

undue hardship."  Fed. R. Civ. P. 45(d)(3)(C)(i).  For the reasons stated above, CPDC cannot

show either a substantial need or undue hardship.  *See supra* Part I.A.; *see also Friedland*, 2006

WL 2583113, at *3 (rejecting argument that need to "reinvent the wheel" constitutes substantial

need or undue hardship).

As a result, the subpoenas should be quashed under Rule 45(d)(3)(B)(ii).

## CONCLUSION

For the reasons set forth above, Stevens and Praxair respectfully request that the Court

quash the document and deposition subpoenas issued by CPDC to Stevens or, in the alternative,

enter a protective order barring enforcement of the subpoenas.  If the Court does not quash or

institute a protective order against the subpoenas in their entirety, Stevens and Praxair

respectfully request that the Court stay compliance with the subpoena pending the Connecticut

district court's ruling on Praxair's motion to stay discovery.

Date:   <u>March 2, 2018</u>                    Respectfully submitted,

<u>/s/ Keely E. Duke</u>
Keely E. Duke (6044)
1087 W River Street, Suite 300
Boise, ID 83702
(208) 342-3310
ked@dukescanlan.com

*Attorneys for Praxair, Inc. and Graham Stevens*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of March 2018, a true and complete copy of the foregoing *Motion to Quash Subpoenas or, in the Alternative, for a Protective Order,* has been served via electronic mail on the following counsel of record:

Alexander Seton Lorenzo
(alexander.lorenzo@alston.com)
Karl Geercken
(karl.geercken@alston.com)
ALSTON & BIRD, LLP
90 Park Avenue, 12th Floor
New York, NY 10016

James I. Glasser
(jglasser@wiggin.com)
WIGGIN & DANA
One Century Tower
265 Church Street, P.O. Box 1832
New Haven, CT 06508-1832

*Counsel for China Petrochemical
Development Company*

<u>/s/ Keely E. Duke</u>
Keely E. Duke

19